196 N.J. Super. 470 (1984)
483 A.2d 411
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
STEVEN GRANT, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted September 25, 1984.
Decided October 15, 1984.
*472 Before Judges PETRELLA and BAIME.
Francis X. Moore, Attorney for appellant, (W. Randolph Smith, on the brief).
John A. Kaye, Monmouth County Prosecutor, attorney for respondent (Alton D. Kenney, Assistant Prosecutor, of counsel).
The opinion of the court was delivered by, BAIME, J.A.D.
*473 Defendant was charged with operating a motor vehicle while intoxicated and refusing to submit to a breathalyzer test contrary to the provisions of N.J.S.A. 39:4-50 and N.J.S.A. 39:4-50.4a, respectively. The complaints emanated from the same incident and were thus consolidated for the purpose of trial. R. 7:4-2(f). Following a plenary hearing in the Middletown Township Municipal Court, defendant was found guilty of refusing to submit to a breathalyzer test and was acquitted of driving while intoxicated. Pursuant to the enhanced penalty provision of N.J.S.A. 39:4-50.4a, defendant was sentenced as a second offender. Specifically, the municipal court judge revoked defendant's driver's license for a period of two years and imposed a $250 fine. Defendant appealed to the Superior Court, Law Division, and a trial de novo was conducted on the municipal court record. R. 3:23-8. At the conclusion of the attorneys' arguments, the Superior Court judge rendered an oral opinion finding defendant guilty of refusing to submit to a breathalyzer test. The trial court agreed with the municipal court judge that defendant qualified as a repeat offender and imposed essentially the same penalty. This appeal followed.
On appeal, defendant contends that the trial court's conclusions are not supported by sufficient credible evidence contained in the record. Defendant also argues that the municipal court erred in consolidating the charges for the purpose of trial. Although ambiguously phrased, defendant apparently claims that joinder of the complaints imposed an unnecessary penalty upon his assertion of the Fifth Amendment privilege against self-incrimination. Finally, defendant contends that the court erroneously sentenced him as a second offender. We are satisfied that these arguments lack merit and affirm.
For the purpose of this appeal, the essential facts are not in dispute. In the early morning hours of April 8, 1983, members of the Middletown Township Police Department responded to a report pertaining to a suspicious vehicle possibly *474 occupied by an intoxicated driver. Upon their arrival, the officers observed a blue Plymouth, which was occupied solely by defendant, parked along the shoulder of the road. Defendant was found asleep behind the wheel in the driver's seat. The engine was not running and the headlights were off. One of the officers touched the hood of the automobile. It did not appear to be warm. In attempting to awaken defendant, the officers found it necessary to use an ammonia inhalent. Upon finally being aroused, defendant was asked to exit from the vehicle. Defendant staggered as he alighted from the automobile. According to the arresting officer, defendant appeared to be intoxicated. More specifically, he had difficulty with his balance, his eyes were bloodshot, his face flushed and there was a strong odor of alcohol emanating from his breath. Although no bottles or containers were found either inside the vehicle or in the immediate vicinity, the automobile smelled of alcohol. When questioned as to his reason for being parked on the shoulder of the road, defendant jokingly replied that he was "waiting for the sun to rise." Defendant acknowledged that he had been drinking and that he was alone in the vehicle. The officers placed defendant under arrest and transported him to police headquarters where he was questioned further. Although defendant initially denied having driven the vehicle, he subsequently admitted that he had been traveling south on Route 35 from Edison.[1] Defendant refused to submit to a breathalyzer.
*475 Defendant did not testify or offer any evidence in his behalf. The municipal court judge found that defendant was intoxicated at the time of his arrest. Nevertheless, he was acquitted of driving while intoxicated because the State failed to prove beyond a reasonable doubt that he had either operated or had intended to drive the vehicle. However, the judge found by a preponderance of the evidence that the police officers had probable cause to arrest defendant and that he refused to submit to a breathalyzer test. Thus, defendant was convicted of that charge.

I
Initially, we reject defendant's contention that the trial judge's conclusions are not supported by credible evidence contained in the record. See State v. Johnson, 42 N.J. 146, 162 (1964). Contrary to defendant's argument, we are not called upon to determine the sufficiency of the evidence necessary to support a conviction of drunk driving. To sustain a charge under N.J.S.A. 39:4-50.4a, the trier of fact must find "by a preponderence of evidence" that the arresting officers "had probable cause to believe" that the accused "had been driving or was in actual physical control" of a motor vehicle on the public highways "while under the influence of intoxicating liquor." The second essential finding is that the defendant refused to submit to a breathalyzer test. See State v. Potts, 186 N.J. Super. 616, 620 (Law Div. 1982). The obvious legislative design is to penalize those who refuse to be tested where reasonable grounds exist to believe that they have violated the drunk driving law. As is readily apparent from the statutory language, actual operation of a vehicle while intoxicated is not an element of the offense. Rather, the necessary statutory predicate is probable cause to believe that an offense has been committed. Probable cause is an elusive concept incapable of *476 precise definition. It is more than mere suspicion but less than legal evidence necessary to convict. State v. Mark, 46 N.J. 262, 271 (1966). It has been described by our Supreme Court as a "well grounded" suspicion that an offense has been committed. State v. Burnett, 42 N.J. 377, 387 (1964). See also State v. Waltz, 61 N.J. 83, 87 (1972); State v. Dilley, 49 N.J. 460, 463-464 (1967); State v. Contursi, 44 N.J. 422, 431 (1965). Further, our courts have eschewed technisms in reviewing factual circumstances to determine whether probable cause exists. State v. Esteves, 93 N.J. 498, 503 (1983). Resolution of such issues is rarely susceptible to abstract contemplation. Rather, the answer must be found in the "tumult of the streets." State v. Gerardo, 53 N.J. 261, 264 (1969). Stated somewhat differently, probable cause must be drawn from the "practical considerations of everyday life" as tested by reasonably prudent persons. Brinegar v. United States, 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879, 1890 (1949). Hence, the decisions of police officers, which often must be made on the spur of the moment, cannot be reviewed from the vantage point of twenty-twenty hindsight.
Here, we are dealing with law enforcement efforts designed to curb one of the chief instrumentalities of human catastrophe, the drunk driver. Cf. Kelly v. Gwinnell and Paragon Corp., 96 N.J. 538 (1984). Within that context we agree with the trial judge's conclusion that the police officers acted reasonably in arresting defendant for driving while intoxicated and requesting him to submit to a breathalyzer test. The issue is purely factual. Defendant was found intoxicated at the wheel of the vehicle with the engine off at a position other than a normal one for parking. Our Supreme Court has held that these facts "warrant a finding that he drove the car and did so while under the influence of alcohol." State v. Chapman, 43 N.J. 300, 301 (1964). See also State v. Daly, 64 N.J. 122 (1973); State v. Sweeney, 40 N.J. 359 (1963); State v. Guerrido, 60 N.J. Super. 505 (App.Div. 1960); State v. Baumgartner, 21 N.J. Super. 348 (App.Div. 1952); State v. Prociuk, 145 N.J. Super. *477 570 (Law Div. 1976); State v. Damoorgian, 53 N.J. Super. 108 (Law Div. 1958). We discern no valid reason to disturb the trial judge's finding in that regard.

II
We are also unpersuaded by defendant's argument that consolidation of the complaints for the purpose of trial violated his Fifth Amendment privilege against self-incrimination. As noted previously, the exact contours of defendant's argument are somewhat unclear. Defendant appears to contend that joinder of the offenses unduly penalized his assertion of the Fifth Amendment privilege. This argument seems to be bottomed upon the different standards of proof with respect to the offenses joined for trial. Defendant correctly notes that it is incumbent upon the State to establish proof beyond a reasonable doubt to support a conviction of drunk driving. State v. DiCarlo, 67 N.J. 321, 327 (1975). On the other hand, the standard of proof in a breathalyzer refusal case is a preponderence of the evidence. N.J.S.A. 39:4-50.4a. Defendant appears to contend that by virtue of the "civil" standard of proof applicable with respect to the breathalyzer refusal charge, the trier of fact may derive an "adverse inference" by virtue of the accused's election to invoke the Fifth Amendment privilege.[2]See e.g., Baxter v. Palmigiano, 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976); Mahne v. Mahne, 66 N.J. 53, 60-61 (1974); Costanzo v. Costanzo, 66 N.J. 63, 68-69 (1974). See also Heidt, "The Conjurer's Circle  The Fifth Amendment Privilege in Civil Cases," 91 Yale L.J. 1062 (1982). In essence, defendant argues that the charges must be severed in every case in which the privilege against self-incrimination will be invoked as to the drunk driving complaint. Succinctly stated, defendant asserts *478 that the breathalyzer refusal charge should be suspended pending disposition of the drunk driving complaint. Such a course would permit the accused to invoke the privilege at the first trial with respect to the drunk driving charge, but afford him the opportunity to testify at the subsequent proceeding pertaining to the breathalyzer refusal complaint. See e.g., Ott v. Bd. of Ed. of Hamilton Tp., 160 N.J. Super. 333, 339-341 (App.Div. 1978).
We reject defendant's contentions. Consolidation of the charges did not compel defendant to testify nor did it automatically penalize him for failure to do so. Examination of the record discloses that the trial judge did not consider defendant's election to invoke the privilege against self-incrimination when he found him guilty of refusing to submit to a breathalyzer test. In short, the only consequence flowing from defendant's assertion of the privilege was that the trier of fact considered the merits of the charges on the available evidence.
Equally without merit is defendant's argument that joinder of the charges tends to coerce the accused to waive his Fifth Amendment privilege. The short answer to this contention is that defendant refused to testify and, thus, was not coerced. In any event, not every "compelling influence" is violative of the Fifth Amendment. The criminal process like the rest of the legal system, is replete with situations requiring "the making of difficult judgments as to which course to follow." McMann v. Richardson, 397 U.S. 759, 769, 90 S.Ct. 1441, 1448, 25 L.Ed.2d 763, 772 (1970). "Although a defendant may have a right, even of constitutional dimensions, to follow whichever course he chooses, the Constitution does not by that token forbid requiring him to so choose." McGautha v. California, 402 U.S. 183, 213, 91 S.Ct. 1454, 1470, 28 L.Ed.2d 711, 729 (1971). In sum, we find no absolute constitutional right that the refusal charge must be suspended to await the outcome of the related quasi-criminal drunk driving case. Cf. Shaw v. Riverdell Hospital, 150 N.J. Super. 585, 591 (Law *479 Div. 1977). See also State v. Reldan, 167 N.J. Super. 595, 599 (Law.Div. 1979); Baker v. United States, 401 F.2d 958, 976 (D.C. Cir.1968), cert. den. 400 U.S. 965, 91 S.Ct. 367, 27 L.Ed.2d 384 (1968).
Nor are we persuaded that joinder of the offenses is in any sense unfair. In point of fact, the legislative history militates strongly in favor of consolidation of such charges. The predecessor to our present statute conferred jurisdiction on the Director of the Division of Motor Vehicles with respect to breathalyzer refusal cases. Thus, drunk driving trials were conducted by the municipal court while refusal offenses were decided by a hearing officer in the Division of Motor Vehicles. State v. Potts, supra, 186 N.J. Super. at 621. The clear legislative purpose in enacting N.J.S.A. 39:4-50.4a was to eliminate the expense and inconvenience of separate proceedings.[3] Quite plainly, mandating severance in all cases in which the accused wishes to assert the privilege against self-incrimination would subvert this important legislative policy.

III
Defendant's final argument is that he should not have been sentenced as a second offender. He contends that the enhanced penalty (suspension of license for two years) is applicable only to those who have been convicted previously of drunk driving and who are subsequently found guilty of the same offense along with refusing to submit to a breathalyzer test. This argument is predicated upon the statutory language which is not a model of clarity. More specifically, N.J.S.A. 39:4-50.4a provides in pertinent part:
The municipal court shall revoke the right to operate a motor vehicle of any operator who, after being arrested for a violation of R.S. 39:4-50, shall refuse to submit to the chemical test provided for in section 2 of P.L. 1966, c. 142 (C. *480 39:4-50.2) when requested to do so, for 6 months unless the refusal was in connection with a subsequent offense under this section, in which case the revocation period shall be for 2 years. (emphasis added)
Since defendant, who was previously convicted of driving while under the influence of intoxicating liquor, was acquitted of that charge by the municipal court judge, he argues that he should have been sentenced as a first offender.
Both the State and defendant heavily rely upon In re Bergwall, 173 N.J. Super. 431 (App.Div. 1980), rev'd on dissent, 85 N.J. 382 (1981). That case is plainly inapposite, however. There, defendant had been previously convicted of driving while impaired, but on that occasion had consented to taking the breathalyzer. Subsequently, he was again arrested for drunk driving, but this time refused to submit to a breathalyzer test. Following defendant's conviction of drunk driving, the Director of the Division of Motor Vehicles imposed the enhanced penalty. The Appellate Division reversed upon the basis that the statute was applicable only with respect to a second conviction for refusal to submit to a breathalyzer test. Judge Lora dissented. He concluded that "the legislative purpose as revealed by the composite thrust of the whole statutory scheme was to impose [the enhanced penalty] for refusing to take the breath test when subsequent to a prior ... drinking/driving violation." Id. at 438. A careful reading of Judge Lora's opinion, which was ultimately adopted by our Supreme Court, reveals that the issue presented here was never addressed. Judge Lora merely concluded that the phrase "under this section" referred to a prior drunk driving conviction. In contrast, the precise issue presented here pertains to the meaning of the word "offense".
We conclude that a second conviction of driving while intoxicated does not constitute a prerequisite for imposition of the enhanced penalty. We are not unmindful of the fact that the statute is penal in nature and, thus, should be strictly construed. State v. Meinken, 10 N.J. 348 (1952); State v. Insabella, 190 N.J. Super. 544 (App.Div. 1983). Nonetheless, *481 the goal of the interpretive process is to ascertain the intent of the legislature. "All rules of construction are subordinate to that obvious proposition." State v. Provenzano, 34 N.J. 318, 322 (1961). In that regard, nothing in the legislative history suggests that a second conviction of driving while under the influence of intoxicating liquor is required before a defendant can be sentenced as a subsequent offender. Indeed, the evidence is clearly to the contrary. See e.g., Statement to Senate Bill No. 1423, Senate Law, Public Safety and Defense Committee (May 24, 1976); Statement to Senate Bill No. 1423, Assembly Judiciary, Law, Public Safety and Defense Committee (Sept. 26, 1976). We note further that our construction of the statute is consistent with the Attorney General's interpretation. Formal Opinion No. 4-1981. See State v. Son, 179 N.J. Super. 549, 554 (App.Div. 1981); Evans-Aristocrat Industries v. Newark, 140 N.J. Super. 226, 230 (App.Div. 1976), aff'd 75 N.J. 84 (1977). We also suggest that the different standards of proof in drunk driving and breathalyzer refusal cases lends support to our conclusion. Since the preponderance of the evidence standard is employed in a prosecution for refusal to submit to a breathalyzer test, it would be anomalous to require the State to establish the commission of a second incident of drunk driving through a conviction, thereby requiring proof beyond a reasonable doubt with respect to that particular element. Finally, we observe that our construction of the provision comports with sound public policy considerations mandating strict enforcement of our laws pertaining to drunk driving. A contrary interpretation would encourage those arrested for operating a vehicle while under the influence to refuse to submit to a breathalyzer in an attempt to avoid the harsher penalty attendant to a drunk driving conviction.
In sum, our review of the record convinces us that defendant was properly convicted and sentenced as a second offender. Accordingly, the judgment is affirmed.
NOTES
[1] Defense counsel did not object to admission of statements made by defendant in response to custodial interrogation. In point of fact, the record does not indicate whether defendant was advised of his constitutional rights pursuant to Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). See State v. Macuk, 57 N.J. 1 (1970). We note in that regard the United States Supreme Court's recent opinion in Berkemer v. McCarty, 468 U.S. ___, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984) holding the Miranda doctrine applicable to custodial interrogation of a suspect accused of a traffic offense, but not to roadside questioning. The issue has not been raised on appeal and we, thus, need not address it. We note, however, that the evidence of defendant's conduct and statements prior to custodial interrogation would seem to be sufficient to establish probable cause.
[2] Defendant's argument seems to rest upon the assumption that the Fifth Amendment privilege is inapplicable with regard to the charge of refusing to submit to a breathalyzer test. In light of our disposition of defendant's contention, we have no occasion to address that issue.
[3] We note that were the charges to be severed, the same evidence would be admissible offered in both proceedings. See State v. Tabisz, 129 N.J. Super. 80, 83 (App.Div. 1974).