212 N.J. Super. 571 (1986)
515 A.2d 1240
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
HAROLD FAHRER, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted January 8, 1986.
Decided September 25, 1986.
*573 Before Judges BRODY, GAYNOR and BAIME.
John M. Iaciofano, attorney, for appellant.
Lee S. Trumbull, Morris County Prosecutor, attorney for respondent (Joseph P. Connor, Assistant Prosecutor, on the letter brief).
The opinion of the court was delivered by GAYNOR, J.A.D.
On this appeal, defendant challenges the de novo affirmance of the Denville Municipal Court's determination that a 1976 conviction under N.J.S.A. 39:4-50.4 for refusing to submit to a breathalyzer test subjected him to the enhanced penalties, as a subsequent offender, upon his refusal conviction under the successor statute, N.J.S.A. 39:4-50.4a. He contends the enhanced penalties may be imposed only when the convictions for the prior and subsequent refusals have been obtained under N.J.S.A. 39:4-50.4a, or when the refusal offense is subsequent to a previous drunken driving conviction under N.J.S.A. 39:4-50. We disagree and affirm.
Defendant was charged with driving while intoxicated, refusing to take a breathalyzer test and careless driving. These offenses allegedly occurred on June 10, 1982. After a trial before the Denville Municipal Court, he was found guilty of refusing to submit to the test and careless driving but acquitted of the driving while intoxicated charge. Following a trial de novo in the Law Division the refusal conviction was upheld. Because of a prior refusal offense in 1976 under the predecessor *574 statute, N.J.S.A. 39:4-50.4, the enhanced penalty of a two-year license revocation applicable to subsequent offenders was imposed.
Defendant claims the court erred in penalizing him as a subsequent offender as he had no previous conviction under N.J.S.A. 39:4-50.4a, the amendatory legislation enacted in 1981. He urges that his conviction in 1976 was under a different statute and thus should not be considered as a prior offense implicating the enhanced penalties provided for in the present statute. While acknowledging that both laws deal with a refusal to submit to a breathalyzer test, defendant points out that the original statute, N.J.S.A. 39:4-50.4, provided for an administrative hearing before the Director, Division of Motor Vehicles, while the successor statute vested jurisdiction over the offense in the municipal courts. Also, as originally enacted, N.J.S.A. 39:4-50.4 did not include an enhanced penalty for a second offender such as provided for in 50.4a.[1] Defendant further claims that the reference in 50.4a to a refusal in connection with a subsequent offense "under this section" indicates a legislative intent to limit the imposition of an enhanced penalty to post 1981 violators. In addition, he suggests the preponderance of evidence standard in N.J.S.A. 50.4a cannot be deemed to apply to proof of refusal to submit, as such conduct constitutes a quasi-criminal offense requiring proof beyond a reasonable doubt, thereby rendering the current statute dissimilar in this respect from the predecessor statute. Furthermore, he challenges the constitutionality of the statute in permitting a lesser standard of proof than beyond a reasonable doubt.[2] Thus, he argues his refusal conviction in 1976 *575 cannot be considered as a prior offense in fixing the penalty for his present violation.
Defendant relies upon In re Bergwall, 85 N.J. 382 (1981), rev'g on dissent, 173 N.J. Super. 431, 436 (App.Div. 1980) in support of his further contention that the enhanced penalty for a subsequent refusal under 50.4a is applicable only when the prior offense is a drunk driving violation under N.J.S.A. 39:4-50.
Prior to 1981, refusals to submit to breathalyzer tests were handled administratively by the Director, Division of Motor Vehicles, in accordance with N.J.S.A. 39:4-50.4. The following penalty provision was contained in subsection (b) of the statute:
Any revocation of the right to operate a motor vehicle over the highways of this State for refusing to submit to a chemical test shall be for 90 days unless the refusal was in connection with a subsequent offense of this section, in which case, the revocation period shall be for 1 year. In addition to any other requirements provided by law, a person whose operator's license is revoked for refusing to submit to a chemical test must satisfy the requirements of a program of alcohol education or rehabilitation pursuant to the provisions of R.S. 39:4-50.
The successor statute, N.J.S.A. 39:4-50.4a, placed jurisdiction over refusal to submit cases in the municipal courts. L. 1981, c. 512. Following an amendment, the statute included the following penalty provision:
The municipal court shall revoke the right to operate a motor vehicle of any operator who, after being arrested for a violation of R.S. 39:4-50, shall refuse to submit to the chemical test provided for in section 2 of P.L. 1966, c. 142 (C.39:4-50.2) when requested to do so, for 6 months unless the refusal was in connection with a subsequent offense under this section, in which case the revocation period shall be for 2 years.
We deal initially with defendant's claim that the enhanced penalty provided for in N.J.S.A. 39:4-50.4a was improperly imposed because his prior refusal conviction was obtained under a different statute. This contention is devoid of merit as the dissimilarities between the present statute and its predecessor are insufficient to render the conduct proscribed in each statute as different offenses. Although the amendatory legislation transferred jurisdiction over the offense from the Division *576 of Motor Vehicles to the municipal courts, prescribed a preponderance of the evidence standard for evaluation of the State's evidence and increased the penalties, the elements of the offense remained the same. As observed in State v. Phillips, 154 N.J. Super. 112 (Law Div. 1977), aff'd 169 N.J. Super. 452 (App.Div. 1979), in holding that a conviction under N.J.S.A. 39:4-50 prior to the 1977 amendments could be used to invoke the subsequent offender penalties of the later statute:
Where the elements of an offense under an amended statute are the same as those that existed prior to the amendments; where both statutes continue to address the same unlawful conduct, and where the legislative policies and intentions remain substantially unchanged, such as is the case here, it would be incongruous to hold that the Legislature intended to preclude the invocation of the subsequent offender provisions where the defendant was convicted of an offense under the original statute and is later convicted under the amended law. [154 N.J. Super. at 119.]
These same considerations compel the conclusion in the present case that the statutory changes subsequent to defendant's refusal conviction in 1976 did not preclude the application of the enhanced penalty provisions of the successor statute, N.J.S.A. 39:4-50.4a. See also State v. Culbertson, 156 N.J. Super. 167 (App.Div. 1978).
Contrary to defendant's additional claim, we read N.J.S.A. 50.4a as permitting a refusal conviction upon proof of the required elements by a preponderance of the evidence and we find no constitutional impediment to this construction and application of the statute. While prosecutions under the Motor Vehicle Act are sometimes considered quasi-criminal actions, State v. Tropea, 78 N.J. 309, 314 (1978), the legislative history of N.J.S.A. 39:4-50.4a evinces an intent that proceedings under this statute continue as civil in nature thus requiring only a preponderance standard for conviction. See State v. Pandoli, 109 N.J. Super. 1, 4 (App.Div. 1970).
As originally introduced, the bill transferring jurisdiction over breathalyzer refusal cases provided that a conviction could not issue unless all elements of the offense were proven beyond a reasonable doubt. The bill was returned by the Governor to *577 the Assembly with certain objections for its reconsideration, including one related to the standard of proof. In this regard, the Governor noted:
I believe that the beyond a reasonable doubt standard of proof is an unusually harsh burden of proof in a non-criminal case and will encourage more people to refuse to submit to a breathalyzer test. Thus, I recommend that the preponderance of the evidence standard currently utilized in the administrative hearing of this type of case be retained. [Report of Governor to the Assembly re: Assembly Bill No. 2293(SR) (January 4, 1982).]
This recommendation by the Governor was accepted by the Assembly in fashioning the final version of this legislation.[3]
Furthermore, as the elements of the offense were not changed by the amendatory statute, the apparent intent of the Legislature was to retain the civil nature of the proceeding with a change in the forum only for the purpose of providing "an efficacious means of deposing [sic] of all issues related to the drunk driving law in the most convenient forum." Statement to Assembly Bill No. 2293, Senate Judiciary Committee (May 14, 1981). See State v. Grant, 196 N.J. Super. 470, 479 (App. Div. 1984).
Moreover, considering that the purpose of the Implied Consent Law "is to foster safety on the highway and not to impose criminal punishment to vindicate public justice," Atkinson v. Parsekian, 37 N.J. 143, 155 (1962), it is clear that the punishment of drunk drivers was not the aim of N.J.S.A. 39:4-50.4a. As the statute has neither a punitive purpose or effect, its transfer of jurisdiction over refusal cases to the municipal courts does not operate to negate the historically civil character of the proceeding. See United States v. Ward, 448 U.S. 242, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980). The statutory scheme "is not to punish the driver but to protect the motoring public by removing the offending driver from the highways with reasonable dispatch." In re Kallen, 92 N.J. 14, 29 (1983). *578 While a conviction may have a chastising effect upon the violator, the purpose of the statute would be hindered by requiring the higher standard of proof. We agree with the observations of our concurring colleague that the penalties for violation of the statute are severe. However, they are designed to induce compliance rather than to impose punishment. In light of this legislative objective, the severity of the sanctions does not render the statutory scheme so punitive in nature as to compel the use of the reasonable doubt standard.
With respect to defendant's further contention that the enhanced penalty of N.J.S.A. 39:4-50.4a may be imposed only when the prior offense is a violation of N.J.S.A. 39:4-50, it is generally acknowledged that In re Bergwall, supra, stands for the proposition that the enhanced penalty for a refusal is applicable regardless of whether the first offense was for driving while intoxicated or for refusal. See State v. Wilhalme, 206 N.J. Super. 359, 360-361 (App.Div. 1985). However, a close reading of Judge Lora's dissent in Bergwall, which was adopted by the Supreme Court, suggests that, as a refusal cannot be "in connection with" another refusal, the enhanced penalty provision would not be triggered by a prior refusal conviction. 173 N.J. Super. at 439. While we recognize this suggestion reflects one possible interpretation of the statute, the statutory language also permits a contrary conclusion, as evidenced by the analysis in our majority opinion in Bergwall. Id. at 432-436. Clearly, the Supreme Court did not conclude in Bergwall that the enhanced penalty is appropriate only when the refusal follows a prior driving while intoxicated conviction.
N.J.S.A. 39:4-50.4a requires the revocation of the license of a driver who, after being arrested for drunk driving, refuses to submit to a breathalyzer test. To find a refusal violation, the court must determine that probable cause existed for the arrest and that the driver thereafter refused the test. A refusal offense thus is not dependent upon a conviction of driving while intoxicated, see State v. Grant, 196 N.J. Super. at 481, although *579 such a conviction will trigger the enhanced penalty for a subsequent refusal violation. Accordingly, a "refusal in connection with a subsequent offense under this section" does not require a prior conviction of driving while under the influence of intoxicating liquor. An arrest for a violation of N.J.S.A. 39:4-50 accompanied by an adjudicated refusal to submit to a breath test constitutes the offense and, if committed subsequent to a previous refusal conviction, would meet the statutory requirement of being a "refusal in connection with a subsequent offense," thus mandating the enhanced penalty.
This construction of the statute comports with the purpose of this legislation to encourage drivers arrested for driving while intoxicated to submit to a breathalyzer test. Report of the New Jersey Motor Vehicle Study Commission, September 1975. By providing similar revocation penalties for first and second convictions for refusal to submit and driving while under the influence of liquor, the Legislature took away any advantage a motorist might gain by refusing to take the test. See State v. Grant, supra at 481. Our conclusion in this respect accords with the intendment of the legislation and recognizes the strong public policy mandating strict enforcement of our drinking-driving laws.
Affirmed.
BRODY, J.A.D. (concurring).
I fully concur in Judge Gaynor's conclusion that the Legislature intended to impose an extended period of driver's license revocation for conviction of a subsequent refusal under N.J.S.A. 39:4-50.4a even though the prior refusal was in violation of N.J.S.A. 39:4-50.4. That conclusion is evident for reasons expressed in the majority opinion regardless of whether the later statute converted the refusal from a civil to a quasi-criminal offense. The majority therefore need not have passed on the constitutionality of the provision in N.J.S.A. 39:4-50.4a that *580 requires the State to prove its case by a mere "preponderance of the evidence."
Also, defendant never questioned the constitutionality of the provision in the Law Division and at best only obliquely touched on the issue in his appellate brief. In his summation before the Law Division judge, defendant's attorney expressly called upon the judge to apply the civil burden of proof stating,
[I]t's incumbent upon the State to prove the elements of a violation, and the Statute itself says that unless all those elements are proven by a preponderance of the evidence, then no conviction shall ensue.
The following is the entire treatment of the issue in defendant's brief:
In its determination of this appeal, it is respectfully requested that this Court recognize the differing burdens of proof which are applicable to an Administrative Hearing (preponderance) and a Municipal Court proceeding (beyond a reasonable doubt). State vs De Carlo [DiCarlo], 67 N.J. 321, 327 (1975), State vs Emery, 27 N.J. 348 (1958).
By determining that N.J.S.A. 39:4-50.4a creates a civil and not a quasi-criminal offense and may therefore constitutionally allow the State to obtain a conviction by a mere preponderance of the evidence, the majority has slipped the traces of sound judicial restraint. "[A] court should not reach and determine a constitutional issue unless absolutely imperative in the disposition of the litigation." Donadio v. Cunningham, 58 N.J. 309, 325-326 (1971). Further, an appellate court should not consider an issue, including a constitutional issue, that the parties neither raised nor argued below "unless it goes to the question of jurisdiction or presents a matter of real public importance." Deerfield Estates, Inc. v. Tp. of East Brunswick, 60 N.J. 115, 120 (1972). Finally, it is "inappropriate" for a court to consider and pass on a constitutional issue that has not been briefed or argued by the parties. Planned Parenthood of New York City v. State, 75 N.J. 49, 55 (1977).
Moreover, I am far from certain that the majority's resolution of the constitutional issue is correct. When the Governor *581 characterized the bill as "non-criminal" in his veto message, the form of the bill differed significantly from the form of the statute ultimately adopted. The bill that the Governor vetoed retained license revocation as the only sanction; in that regard the effect of the bill was simply to change the forum for the initial hearing of a civil matter from the Motor Vehicle Commissioner's office to the Municipal Court. However, the later bill that the Governor signed contained a mandatory fine of "not less than $250.00 nor more than $500.00." After the Governor signed the bill into law, he released a statement to the press referring to its "criminal penalties against those who refuse to take the `breathalyzer' tests."
The majority cites In re Kallen, 92 N.J. 14 (1983), Atkinson v. Parsekian, 37 N.J. 143 (1962) and State v. Pandoli, 109 N.J. Super. 1 (App.Div. 1970) as authority that highway safety and not punishment of offenders is the aim of N.J.S.A. 39:4-50.4a. In those cases, however, the courts were referring to N.J.S.A. 39:4-50.4 under which the only sanction was license revocation.
A respectable argument may be made that conviction of refusal, though lacking the prospect of incarceration, carries a stigma almost equal to the stigma attached to a conviction of driving while intoxicated, a quasi-criminal offense. See State v. Emery, 27 N.J. 348, 353 (1958). Evidence of refusal may be used to prove guilt of driving while intoxicated. State v. Tabisz, 129 N.J. Super. 80, 83 (App.Div. 1974). In some respects there is even greater opprobrium attached to withholding evidence of driving while intoxicated than there is to committing the underlying offense. See N.J.S.A. 2C:29-3(b)(1) (making it an offense to suppress evidence, by way of concealment or destruction, with purpose to hinder one's own apprehension, prosecution, conviction or punishment).
I would affirm for the reasons in the majority opinion that do not rest on a resolution of the constitutional question.
NOTES
[1] The enhanced penalty provision in N.J.S.A. 39:4-50.4 was added by the 1977 amendment. L. 1977, c. 29, § 4.
[2] This contention was argued in defendant's reply brief in countering the State's interpretation of the statute as to the required burden of proof.
[3] The provision in the legislation, as finally approved by the Governor, for a fine, or the reference by his office to the "criminal penalties," does not change the civil nature of the proceedings.